## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NO. 08-21757-CIV-MORENO/TORRES

**YVONNE S. ROSENTHAL**,

      Plaintiff,

v.

**LONGCHAMP CORAL GABLES LLC**,
d/b/a LONGCHAMP AND LONGCHAMP
CORAL GABLES,

      Defendant.

_____/

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S
## MOTION TO DISMISS THE SECOND AMENDED COMPLAINT

### I.      INTRODUCTION

The dispositive issue raised by Defendant's motion to dismiss is whether the well pled allegations of the Second Amended Complaint ("SAC") set forth facts that, if proven at trial, would show that Defendant recklessly violated 15 U.S.C. § 1681c(g).[1]  That is, whether the SAC alleges facts that when taken as true establish Defendant's violation was more than negligent, but not necessarily committed with knowledge of FACTA's requirements.  (See 3/19/2009 Or., D.E. # 37, at 3, 5 (articulating recklessness standard)). The answer to that question is clearly yes, and the motion should therefore be denied.

---

[1] To be clear, the SAC pleads alternatively that Defendant (i) willfully violated § 1681c(g) or (ii) negligently violated § 1681c(g).  Because willfulness is a higher standard, the allegations showing a willful violation also establish at the pleading stage a negligent violation. *See* infra Part IV(D).  Thus, the Court would only need to reach the sufficiency of the negligence allegations, should it find willfulness is not adequately alleged.

1

The SAC alleges specific facts establishing that Defendant had both constructive notice (see SAC ¶¶ 10-17) **and** actual notice (see SAC ¶¶ 18-26) of the § 1681c(g)'s expiration date suppression requirement well in advance of its violation.  The facts alleged in the SAC further show that, at the time of the alleged violation here, no reasonable merchant could have understood FACTA's requirements to permit printing a customer's expiration date on a computer generated receipt (see SAC ¶ 17).  Defendant, nonetheless, either failed to investigate whether it was compliant or chose to ignore the law (see SAC ¶ 27).  By any definition, such conduct – violating the law despite both constructive and actual notice of its requirements – is reckless.  *See generally* 5 C.F.R. § 551.104 (for Fair Labor Standard Act purposes, reckless disregard is "failure to make adequate inquiry into whether conduct is in compliance with the Act"); *Farmer v. Brennan*, 511 U.S. 825, 836 (1994) ("The civil law generally calls a person reckless who acts or (if the person has a duty to act) fails to act in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.").[2]

Defendant's motion to dismiss does not (and could not) argue that the SAC's well-pled allegations of constructive and actual notice and Defendant's subsequent inaction fail to establish recklessness under the Court's March 19, 2009 Order.  Instead, Defendant disputes the allegations and seeks a factual determination based upon its self-serving view of certain documents and its bald denial of certain allegations.  Defendant's introduction of documents and request for factual determinations is, of course, improper

[2] In fact, these allegations would likely satisfy even the Private Securities Litigation Reform Act of 1995's ("PSLRA") heightened pleading standard for "severe recklessness." *See Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1282 n.18 (11th Cir. 1999) (PSLRA heightened standard of "severe recklessness" applies when risk was with "known" or "so obvious that the defendant must have been aware of it").  Plaintiff, of course, need not satisfy the PSLRA heightened standards.

at the pleading stage.[3]  Moreover, the supposed facts that Defendant seeks to argue are refuted by the very documents it seeks to introduce and the public statements of one of Defendant's merchant banks, Chase.  In short, Defendant's motion is procedurally and factually wrong.

The motion should be denied because the well-pled allegations of the SAC establish that Defendant acted recklessly in violating § 1681c(g)'s expiration date suppression requirement.

## II.   RELEVANT PROCEDURAL BACKGROUND AND FACTUAL ALLEGATIONS

This is a private attorney general action brought to remedy Defendant's violation of FACTA.[4]  On March 19, 2009, the Court entered an order granting in part Defendant's original motion to dismiss.  The Court held that "Defendant acted more than negligently but less than knowledgeable of the laws requirements is not established by the mere fact that FACTA's requirements were well publicized in the media and contained in

---

[3] Defendant's introduction of documents is particularly problematic in this case because Defendant previously opposed any discovery prior to resolution of Defendant's pleading motions (see Motion for Protective Order, D.E. # 25 and 26).  In a good faith effort to resolve that discovery issue, Plaintiff agreed to very limited discovery prior to resolution of Defendant's pleading motions (See D.E. # 29).  Now Defendant has effectively moved for a summary judgment on an incomplete and selective record and under an agreed order that will not allow Plaintiff to obtain the discovery necessary to oppose a motion for summary judgment.

[4] Contrary to Defendant's rhetoric, this is not type of abusive action that the Clarification Act was aimed at and Defendant is not a "mom and pop" retailer that innocently and unwittingly violated FACTA.  This is not a class action, so there is no threat of astronomical damages.  Moreover, Defendant is a sophisticated retailer with operations throughout the world.  For example, on July 16, 2008, almost a month after the filing of the Complaint (D.E. # 1), Defendant closed on the purchase of a 6,000 square-foot building housing one of its Manhattan retail stores on the Upper East Side for $48 million.  And as alleged in the SAC, Defendant continued to flout FACTA's requirement years after its effective date, despite actual notice of those requirements.  Thus, absent this action and a judgment from this Court, it is unlikely that Defendant will ever come into compliance with FACTA.

Defendant's credit card agreements." (D.E. # 37 at 5 (internal quotation and alteration omitted). The Court allowed Plaintiff leave to re-plead its allegations of recklessness.

In light of the Court's ruling, Plaintiff pled specific factual allegations demonstrating that Defendant had both constructive and actual notice of FACTA's expiration date suppression requirement.

**A.    Factual Allegations Establishing Constructive Notice**.

Paragraphs 12-through-17 of the SAC set forth specific factual allegations establishing that (i) Defendant received constructive notice of FACTA's expiration date suppression requirement and (ii) by the time of the violation at issue here, no reasonable merchant could have understood FACTA to allow for the printing of the expiration date. More specifically, the SAC added allegations that:

- Provide a specific example of a credit card rule prohibiting the printing of the expiration date that is binding upon merchants, such as Defendant, who accept Visa. (SAC ¶ 12.)

- Describe the May 2007 business alert issued by the FTC and distributed to 187 national trade associations that advised: "According to the federal Fair and Accurate Credit Transactions Act (FACTA), the electronically printed credit and debit card receipts you give your customers must shorten – or truncate – the account information. You may include no more than the last five digits of the card number, and you must delete the expiration date." (SAC ¶ 13.)

- Explain that by October 2007 the Clarification Act had been introduced in Congress to provide relief for those businesses that had committed an expiration date only violation shortly after FACTA took effect in December 2006. (SAC ¶ 15.)

- Explain that by May 2008 at least sixteen United States District Judges had ruled that FACTA prohibited printing expiration dates on receipts and no court had accepted a reading of FACTA that allowed for the printing of expiration dates on receipts if the account number was truncated. (SAC ¶ 16.)

These facts, combined with the publicity that FACTA received and the presumption that one knows the law, establish that by June 2008 Defendant had constructive notice that printing a credit card expiration date on a computer generated receipt provided to a consumer was a violation of federal and state law.

**B.     Factual Allegations Establishing Actual Notice.**

Paragraphs 18-through-26 set forth specific allegations establishing facts that show Defendant also received actual notice of FACTA's prohibition against printing expiration dates.  The SAC sets forth that:

- Chase was Defendant's merchant bank.  (SAC ¶¶19, 21.)

- Beginning in 2003, Chase began advising its clients, which include Defendant, through direct correspondence that they were required to both truncate the account number **and** suppress the expiration dates. (SAC ¶ 22.)

- Between 2003 and June 3, 2008,[5] Chase sent Defendant and its other clients several correspondence advising them that they were required to suppress the credit card expiration date on computer generated receipts (as well as that they were required to truncate the account number).  (SAC ¶ 23.)

- Chase provided such frequent correspondence that both expiration date suppression and account number truncation were legal requirements that when the Credit and Debit Card Clarification Act of 2007 was enacted, Chase described the legislation as reiterating the importance of the suppression and truncation requirements.   (SAC ¶ 24.)

- Chase advised Defendant and its other clients that the Credit and Debit Card Clarification Act of 2007 did not apply to merchants who printed expiration dates on their receipts after June 3, 2008.  (SAC ¶ 24).

- Chase advised Defendant and its other clients that it was the client's (i.e., Defendant's) responsibility to ensure that it receipts were compliant.  (SAC ¶ 25).

---

[5] Paragraph 23 of the SAC mistakenly says "June 3, 2007" when it should be June 3, 2008.

These allegations establish that Defendant repeatedly received actual notice that it was required to suppress the credit card expiration date.  Defendant, however, inexplicably either failed to investigate whether it was in compliance or chose to ignore the law (see SAC ¶¶ 27-28).  That is reckless conduct.

## III.    LEGAL STANDARD

Defendant spends much of its motion attempting to erect a heightened pleading standard that would go well beyond the Rule 12(b)(6) standard articulated by the Supreme Court in *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007).  There is no heightened pleading requirement.[6]

To survive a motion to dismiss under *Twombly*, the complaint must set forth factual allegations adequate to raise a right to relief above the speculative level, that is, to set forth a plausible entitlement to relief.  *Id.* at 1964-67.  "It is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render [the elements of the claim] plausible."  *Watts v. Florida Int'l Univ.*, 495 F.3d 1289, 1296 (11th Cir. 2007) (post *Twombly*) (internal quotation omitted).  In conducting its Rule 12(b)(6) analysis of the complaint, the Court accepts the well pled allegations of the complaint as true and construes them in the light most favorable to the plaintiff.  *See id.* at 1964-65; *Fin. Sec. Assurance, Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1282 (11th Cir. 2007) (post *Twombly*).

Thus, "[w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic

---

[6] It should be noted that in a recent FACTA decision, the Eleventh Circuit made clear that the Clarification Act does not apply to violations occurring after June 3, 2008.  *See Harris v. Mexican Specialty Foods, Inc.*, __ F.3d __, slip. op. at 5 (11th Cir. April 9, 2009)(No. 08-13510).

recitation of the elements of a cause of action will not do." *Twombly*, 127 S. Ct. at 1964-65. Rather, the facts set forth in the complaint must be sufficient to "nudge the[] claims across the line from conceivable to plausible." *Id.* at 1974.

This standard is met here where the SAC contains well-pled factual allegations establishing both constructive and actual notice. Under those allegations, Plaintiff's claim that Defendant's violation was reckless (or alternatively negligent) is certainly plausible.

## IV.   ARGUMENT

Faced with the SAC's well-pled allegations that plainly allege a willful (and a negligent) violation – *i.e.*, conduct by Defendant that was more than negligent, but need not rise to the level of a knowing violation of FACTA – Defendant resorts to arguing facts by seeking to introduce documents and making bald factual assertions that contradict the well-pled allegations of the SAC. Defendant's arguments are not only procedurally improper, they conflict with publicly available information and misrepresent the very documents that Defendant seeks to introduce. The motion to dismiss should therefore be denied.

### A. Defendant Improperly Seeks to Introduce Documents Outside the Complaint and Requests the Court to Make Factual Findings at the Pleading Stage

It is axiomatic that a Rule 12(b)(6) motion is limited to the well pled allegations of the complaint. *See Grossman v. Nationsbank*, 225 F.3d  12218, 1231 (11th Cir. 2000) (motion to dismiss limited to four corners of complaint).[7] Defendant nonetheless seeks to

---

[7] The Eleventh Circuit has held that a document attached to a motion to dismiss may be considered without converting the motion to a summary judgment motion if the attached document is (1) central to the plaintiff's claim and (2) undisputed. *See Horsley v. Feldt,*

introduce documents to overcome the allegations of actual notice and seeks factual findings (on an incomplete record) to overcome the allegations of actual notice. These arguments should be disregarded as beyond the proper scope of a motion to dismiss.

Defendant seeks to justify its introduction of documents (see Mot. at 2) by case law referencing Rule 10(c). Rule 10(c) and the case law applying the Rule are entirely inapplicable as that Rule applies in contract cases and similar actions were the document on which the suit is based is attached to the complaint. *See* Fed. R. Civ. P. 10(c) ("A statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion. *A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes*.") (emphasis supplied). There is simply no justification for Defendant's improper introduction of evidence and its request for factual findings at the pleading stage.

### B. Defendants' Bald Denial Cannot Overcome the Well-Pled Allegations Establishing Actual Notice.

The SAC makes specific factual allegations that Defendant's merchant bank notified Defendant repeatedly that FACTA required both suppression of the credit card expiration date and truncation of the credit card number (SAC ¶¶ 18-26.) These allegations are based upon Chase's publicly available statement that it repeatedly notified

---

304 F.3d 1125, 1134 (11th Cir.2002). This exception does not apply here. First, Defendant has not argued that the documents come within this exception. Second, the documents are neither central to Plaintiff's claim nor undisputed. While Defendant characterizes its contracts with merchant banks as central to Plaintiff's claims, they are not. On the other hand, the communications from Chase to its clients are certainly significant to the allegations of willfulness. Those communications began in 2003, after the Chase contract was entered. The rules of the credit card companies are also relevant and referenced in the SAC, and as discussed *infra* those rules are incorporated by the contracts that Defendant seeks to introduce. However, Defendant has not included the rules; thus, the agreements are not complete. Moreover, it would be inaccurate to call the rules central to the claim.

its clients, such as Defendants, about FACTA's requiring both suppression of the credit card expiration date and truncation of the credit card number.   These are specific factual allegations that comply with the applicable pleading standard and establish, at a minimum, a plausible basis that Defendant's violation was reckless. *Watts*, 495 F.3d at 1296 ("It is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render [the elements of the claim] plausible.").

Defendant's response to these specific allegations is to (i) label them conclusory and (ii) challenge them as lacking evidentiary support (see Mot. at 7-8).  Neither criticism is legitimate.

*First*, Defendant's self-serving contention that the allegations concerning actual notice are conclusory is simply wrong.  The actual notice allegations identify the specific source of the notice, Chase (SAC ¶ 22), that Chase repeatedly provided frequent notice between 2003 and 2008 (SAC ¶¶ 23-24), and that Chase also advised merchants including Defendant that it was their responsibility to ensure compliance (SAC ¶ 25). These are specific factual allegations establishing actual notice, not mere conclusions or labels.

*Second*, Defendant's contention that there is no support for the allegations is both premature and wrong.  Defendant's argument rests on the bald and self-serving factual assertion that it "did not receive [notice from Chase] and/or does not have [the notice]." (Mot. at 8.)   As noted above, the allegations are based upon Chase's publicly available statement as to what it provided its clients, which include Defendant.  This is a sufficient basis to support pleading the allegations.  And those allegations are what are properly considered at this stage.

9

Defendant's denial that it received correspondence from Chase does not end the inquiry and is not a ground for a 12(b)(6) dismissal.  Discovery from Chase, Defendant, and possibly others will be needed to confirm what was (i) sent to Defendant from Chase and (ii) what became of it after it was received.

To the extent that Defendant contends its limited discovery responses to date are dispositive as to what was sent and received from Chase, that is pure nonsense.   There has been very limited discovery to date because of Defendant's resistance to move forward with discovery while its 12(b)(6) motions were pending.  As noted above, Defendant initially refused to engage in any discovery whatsoever while its motion to dismiss was pending and moved for a protective order (see D.E. # 25.).  In a good faith effort to compromise that discovery dispute, Plaintiff agreed to limited discovery prior to resolution of the motion to dismiss (see D.E. # 29.).

Because of Defendant's position there has been no email discovery – the area where most of the relevant correspondence with Chase is likely to be found.  Because of Defendant's position there has been no third-party discovery – which will be necessary to show what was sent from Chase even if Defendant has destroyed its copies.  Nor is the hard copy production from Defendant complete; Plaintiff has served an initial set of document requests, and Defendant's production does not appear to be complete, which is a matter that will be determined through further discovery.  Because of Defendant's position, there has also been no interrogatories or depositions.  Written and deposition discovery will be necessary to test many of the bald assertions Defendant has already

made.[8]   Defendant is simply using a select group of documents to bolster its improper request that this Court make a factual determination as to what Chase sent and what was received by Defendant.

At base, Defendant's argument is that it disagrees with the well-pled factual allegations concerning actual notice.  That, however, is not a ground for a Rule 12(b)(6) dismissal; it is a ground for Defendant to deny the allegations in its answer and, after appropriate discovery, move for summary judgment, if such a motion is viable.

### C. Defendant's Selective, and Misleading, Introduction of Documents Cannot Overcome the Well-Pled Allegations Establishing Constructive Notice

The SAC also contains specific factual allegations establishing Defendant's constructive knowledge of FACTA's expiration date suppression requirement (see SAC ¶ 12-17).  Those allegations identify: (1) Visa's rule in effect at the time of Defendant's violation, which makes clear suppression of the expiration date is required; (2) the FTC's business alert that was distributed to 187 trade associations, which makes clear that suppression of the expiration date is required; and (3) the uniform federal case law, which by the time of Defendant's violation made clear that suppression of the expiration date is required.

As stated above, Defendant's effort to introduce documents at this stage is improper.  Moreover, Defendant's arguments significantly misrepresent the documents Defendant introduces improperly.

### 1. Defendant Misrepresents what Its Contracts State Concerning the Applicability of Credit Card Rules

---

[8] For example, testimony from Defendant will be necessary to test the assertion made in its initial motion to dismiss that it read FACTA as allowing a merchant to print the expiration date on a computer generated receipt.

11

The SAC alleges that (i) the rules of the major credit card issuers prohibit printing the expiration date on a computer generated receipt provided to a customer and (ii) that Defendant is contractually obligated to comply with those rules (see SAC ¶ 12).  The SAC also quotes the Visa rule that makes clear suppression of expiration dates on consumers' receipts is mandatory.  In response to these well-pled allegations, Defendant asserts that none of the contracts it has produced "mention any legal or contractual obligation to omit credit card expiration dates from printed sales receipts."  (Mot. at 7.). It is the rules and regulations incorporated expressly by those contracts, however, which are binding and prohibit printing an expiration date on a computer generated credit card receipt (see SAC ¶ 12).

The agreements produced by Defendant confirm the allegation that the rules of credit card issuers are expressly binding upon Defendant.  Paragraph 15 of the Chase agreement produced by Defendant states:

> **15.  Operating Procedures; Association Rules**
>
> You agree to follow the procedures in the Operating Procedures section of our Agreement in connection with each Card transaction and ***to comply with all applicable Association Rules.*** . . . .

(RLONG0000017, Ex A to the Mot. to Dismiss (D.E. # 41)) (emphasis supplied). Association is defined by the contract as "[a]ny entity formed to administer and promote Cards, including without limitation Mastercard International, Incorporated, VISA U.S.A., Inc. and Visa International."  (RLONG0000026, Ex A to the Mot. to Dismiss (D.E. # 41). Association Rules are defined by the contract as the "rules, regulations, releases, interpretations, and other requirements (whether contractual or otherwise) imposed or adopted by any Association."  (*Id.*)

The PNC agreement produced by Defendant contains an identical paragraph 15, which is captioned "Association Rules." (RLONG0000067, Ex B to the Mot. to Dismiss (D.E. # 42)). Moreover, the PNC agreement separately provides that it is an "important merchant responsibility" that Defendant "[c]omply with Visa, Mastercard, and Discover rules." (RLONG0000051, Ex B to the Mot. to Dismiss (D.E. # 42)). That directive appears on the page of the agreement bearing the signature of Defendant's president. Thus, the merchant bank agreements produced by Defendant – the relevant agreements for accepting Visa and Mastercard – make clear that Defendant is, and was, bound to comply with the rules issued by Visa, Mastercard and Discover.

Defendant also produced agreements from American Express and Discover. The Discover agreement, like the agreements from the merchant banks, expressly incorporates Discover's operating regulations. (RLONG0000107, ¶ 2, Ex D to the Mot. to Dismiss (D.E. # 43)). In sum, three of the four agreements produced by Defendant incorporate credit card issuer rules and regulations and make them binding upon Defendant. And two of those three agreements (Chase and PNC) incorporate the Visa rules, which are the rules referenced in the SAC. Thus, Defendant's reliance on the contracts is not only procedurally improper, Defendant is wrong when it argues that those contracts establish Defendant did not have to comply with credit card rules, as alleged in the SAC.

**2.      *Defendants Misrepresent the Effect of the PNC Agreement – A Contract that Was Not Even in Effect at the Time of the Violation***

In addition to arguing wrongly that it is not bound by credit card rules prohibiting printing the credit card expiration date on computer generated receipts to customers, Defendant also asserts that the PNC agreement "suggest[s]" that Defendant "can print the

card expiration date" on computer generated receipts provided to customers.[9]  (Mot. at 7.)
The PNC agreement does no such thing.

> *First,* the PNC agreement could not have possibly confused Defendant about
FACTA's requirements because Defendant entered the agreement 5 months ***after*** the
violation at issue here occurred, after this lawsuit was filed, and presumably after
Defendant changed its policy.  The PNC contract, which Defendant attempts to use for
support of its improper factual argument, could not influence Defendant' actions at issue
because the contract did not exist at the time.

> *Second,* as discussed above, both the PNC agreement and the Chase agreement
expressly incorporate the Visa and Mastercard rules.  Those rules, as stated in the SAC (¶
12), require suppression of the credit card expiration date on computer generated receipts
provided to customers.

> *Third,* the section of the agreement that Defendant cites concerns the information
to be included in "sales drafts," not the information on computer generated receipts
provided to customers.  That is, the cited section does not specifically address computer
generated, customer receipts, which the credit card rules referenced in the SAC do.  Sales
drafts are records of transactions made by the merchant for its own records and settlement
purposes with the credit card companies.  (See RLONG000081, Ex B to the Mot. to
Dismiss (D.E. # 43)).  A sales draft may be computer generated by swiping the card or it

---

[9] In the same paragraph of its brief, Defendant also asserts that the Chase agreement "did
not mention the need to delete the credit card expiration date."  This is a nonstarter for
several reasons.  First, the section of the Chase agreement that Defendant cites does **not**
state that the expiration date should be printed on the sales slip.  Second, the Chase
agreement was entered before FACTA was even enacted.  Third, and most importantly,
the Chase agreement expressly adopts Visa and Mastercard rules, including the rules
prohibiting printing expiration dates (see SAC ¶ 12).

may be made by hand when the card is imprinted.  A copy of the sales draft may also, but need not, be provided to the consumer as her receipt.  Thus, FACTA and the overlapping credit rules do not apply to sales drafts unless the sales draft is (i) computer generated and (ii) a copy of it is provided to the consumer as her receipt.   In that case, expiration date suppression would be required.  (See RLONG000081, Ex B to the Mot. to Dismiss (D.E. # 43) (providing sales draft must comply with all Association Rules)).

Defendant is wrong to argue that the PNC agreement suggests it may print the expiration date on computer generated receipts provided to customers.  More importantly for present purposes, however, Defendant's arguments about inferences that may be drawn from documents and how those inferences affected Defendant's state of mind are factual matters that are not appropriately resolved at the pleading stage – they are fact issues for the trier of fact.

### D.  The SAC Sufficiently Alleges an Alternative Claim for Negligent Violating 15 U.S.C. § 1681c(g)

As set forth above, the SAC sufficiently plead a willful violation of § 1681c(g) entitling Plaintiff to recover statutory damages under 15 U.S.C. §1681n.  The SAC also pleads, alternatively, that Defendant negligently violated § 1681c(g), which would entitle Plaintiff to recover actual damages as that term is defined by the FCRA.  Because the allegations for the two claims are the same and the difference is Defendant's state of mind, Plaintiff has pled one count seeking alternative relief as contemplated by Rule 8 of the Federal Rules of Civil Procedure.  *See* Fed. R. Civ. P. 8(d)(2) ("A party may set out 2 or more statements of a claim or defense alternatively or hypothetically, either in a single count or defense or in separate ones.")

15

In it motion, Defendant argues that Plaintiff has failed to adequately plead a negligent violation because she has not alleged with specificity her actual damages. Defendant is wrong.

As the Eleventh Circuit has recognized, "[s]everal courts have previously recognized the possibility that a claim for actual or compensatory damages under [§ 1681o of] FCRA may include compensation for emotional distress in the absence of physical injury or out-of-pocket expense." *Levine v. World Financial Network National Bank Structure, Inc.*, 437 F.3d 1118 (11th Cir. 2006); *also Cassella v. Equifax Credit Info Servs.*, 56 F.3d 469, 474 (2d Cir. 1995) (district court "properly recognized that 'actual damages' may include humiliation and mental distress, even in the absence of out-of-pocket expenses."). The case law is clear a plaintiff may, in fact, maintain a claim for actual damages based solely on mental distress inflicted by an FCRA violation, such as that committed by Defendant. Moreover, there is no requirement that a plaintiff plead its actual damages with specificity. *See Philbin v. Trans Union Corp.*, 101 F.3d 957, 963 n.3 (3d Cir. 1996) ("Given the amorphous nature of the damages at issue, we do not consider it necessary that [the plaintiff] state his damages with any greater degree of particularity.").

"Plaintiff can recover any actual damages sustained as a result of Defendant's negligent violation of FACTA." *Lemontang v. J.W. Lee, Inc.,* 2008 WL 2490657, *2 (S.D. Fla. June 19, 2008). When a business prints a customer's credit card expiration date on a receipt, it places "her at an increased risk of being a victim of credit card fraud. This is a loss, albeit one that is likely small and hard to quantify, which is why statutes such as FCRA provide for modest damages without proof of injury." *Ramirez v. Midwest*

16

*Airlines, Inc.*, 537 F. Supp. 2d 1161, 1169 (D. Kan. 2008).   Thus, even when a willful violation does not exist under 15 U.S.C. § 1681, a claimant may maintain an action for actual damages under 15 U.S.C. § 1681o.  *See, e.g., Arriola v. Safeco*, No. 92-35321, 15 F.3d 1082 (9th Cir. Dec. 21, 1993) (unpublished table decision) (affirming motion for judgment as a matter of law under § 1681n for willful violation, but reversing judgment under 1681o because the claimant could maintain a claim for actual damages).

The SAC plainly alleges facts supporting that Defendant negligently violated FACTA Section 113.   Thus, Plaintiff's alternative claim under 15 U.S.C. § 1681n should stand.

**V.      CONCLUSION**

As discussed above, the SAC pleads facts (not conclusions) establishing that Defendant had both constructive and actual notice of FACTA's requirements but inexplicably failed to investigate whether it was FACTA compliant or simply ignored the law.   Those well-pled allegations meet the standard of more than negligent, but not necessarily knowing.   Thus, the SAC states a claim for a willful violation of 15 U.S.C. § 1681c(g).   The motion to dismiss should therefore be denied.

Respectfully submitted,

BANDER & ASSOCIATES, P.A.
444 Brickell Avenue, Suite 300
Miami, Florida 33131
Telephone:  (305) 358-5800
Fax:  (305) 374-6593
Email:  stephen@bandervisa.com


s/Stephen M. Bander
Stephen M. Bander
Florida Bar No. 0160679
Attorney for Plaintiff Yvonne S. Rosenthal

Dated:  May 7, 2009, Miami, Florida.

<strong>CERTIFICATE OF SERVICE</strong>

I hereby certify that on May 7, 2009, I electronically filed the foregoing document

with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is

being served this day on all counsel of record or pro se parties identified on the attached

Service List in the manner specified, either via transmission of Notices of Electronic

Filing generated by CM/ECF or in some other authorized manner for those counsel or

parties who are not authorized to receive electronically Notices of Electronic Filing.

s/Stephen M. Bander<br>Stephen M. Bander

<strong>SERVICE LIST<br>CASE NO. 08-21757-CIV-MORENO/TORRES</strong>

Stephen M. Bander (Florida Bar No. 0160679)
stephen@bandervisa.com
BANDER & ASSOCIATES, P.A.
444 Brickell Avenue, Suite 300
Miami, Florida 33131
Telephone: (305) 358-5800
Facsimile: (305) 374-6593
Attorney for Plaintiff
Notices of Electronic Filing

Garret G. Rasmussen
grasmussen@orrick.com
Antony P. Kim
akim@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1152 15th Street, N.W.
Washington, D.C. 20005
Telephone:  (202) 339-8400
Facsimile:  (202) 338-8500
Attorneys for Defendant
Notices of Electronic Filing

Alexander Angueira (Florida Bar No. 0716091)

18

alex@angueiralaw.com
ALEXANDER ANGUEIRA, P.L.L.C.
Plaza 57, 7301 S.W. 57th Court
Suite 515
South Miami, Florida 33143
Telephone:  (305) 357-9031
Facsimile:  (305) 357-9050
Attorney for Defendant
Notices of Electronic Filing

Daniel K. Crane-Hirsch
daniel.crane-hirsch@usdoj.gov
Attorney for the United States of America
Trial Attorney, Office of Consumer Litigation
U.S. Department of Justice
P.O. Box 386
Washington, D.C. 20044-0386
Telephone:  (202) 616-8242
Facsimile:  (202) 514-8742
Notices of Electronic Filing

Anthony Pogorzelski
anthony.pogorzelski@usdoj.gov
Attorney for the United States of America
Assistant U.S. Attorney, Southern District of Florida
99 N.E. 4th Street
Miami, Florida 33132
Telephone:  (305) 961-9296
Facsimile:  (305) 530-7139
Notices of Electronic Filing